IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JENNIFER THOMPSON, personally and as assignee of BRYCE THOMPSON and on behalf of the estate and heir of BRYCE THOMPSON<br><br>                Plaintiff,<br><br>v.<br><br>WASHINGTON NATIONAL INSURANCE COMPANY,<br>                Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S 34 MOTION TO STRIKE; GRANTING DEFENDANT'S 43 MOTION TO STRIKE; AND DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>Case No.2:14-cv-00660-DN<br><br>District Judge David Nuffer |

Three separate motions have been filed by Defendant, Washington National Insurance Company ("Washington"): a Motion to Strike[1] ("34 Motion to Strike"); a Motion to Dismiss;[2] and a second Motion to Strike[3] ("43 Motion to Strike"). Plaintiff Jennifer Thompson opposes each of Washington's motions.

In the 34 Motion to Strike, Washington argues that the phrase "federal law" should be stricken from Ms. Thompson's Complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.[4] In the Motion to Dismiss, Washington argues that dismissal of Plaintiff's fourth cause of action is warranted[5] because Ms. Thompson has failed to plead a cognizable claim

---

[1] Washington National Ins. Co.'s Mot. to Strike and Supporting Authority ("34 Motion to Strike"), docket no. 34, filed July 7, 2015.

[2] Washington National Ins. Co.'s Mot. to Dismiss Fourth Cause of Action and Supporting Authority ("Motion to Dismiss"), docket no. 35, filed July 7, 2015.

[3] Washington National Ins. Co.'s Mot. to Exclude Exhibits from Pl.'s Mem. in Opp'n to Mot. to Dismiss Fourth Cause of Action and Supporting Authority ("43 Motion to Strike"), docket no. 43, filed Aug. 31, 2015.

[4] 34 Motion to Strike at 4.

[5] Motion to Dismiss at 5.

under Utah's Genetic Testing Privacy Act ("Act").[6] In the 43 Motion to Strike, Washington argues that the materials attached to Ms. Thompson's Opposition Memorandum[7] to Washington's Motion to Dismiss should be stricken because they are not attached to the Complaint or referenced therein.

As discussed below, the phrase "federal law" contained in Ms. Thompson's first cause of action will not be stricken because it is not redundant, immaterial, impertinent, or scandalous. Therefore, the 34 Motion to Strike is DENIED.

Further, because Ms. Thompson has attached materials to her Opposition Memorandum that are neither attached to the Complaint nor referenced therein, they cannot be considered when deciding Washington's Motion to Dismiss. Therefore, the 43 Motion to Strike is GRANTED.

Finally, because Ms. Thompson's fourth cause of action contains sufficient allegations to survive a motion to dismiss, Washington's Motion to Dismiss the fourth cause of action is DENIED.

### FACTUAL ALLEGATIONS[8]

Ms. Thompson is the widow and assignee of Bryce Thompson.[9] Bryce Thompson was diagnosed with cancer in 2013.[10] At the time of diagnosis, Mr. Thompson had an insurance policy ("Policy") with Washington,[11] which required Washington to pay Mr. Thompson $70,000

---

[6] Utah Code Ann. § 26-45-101 *et seq*.

[7] Memorandum in Opposition re Motion to Dismiss Fourth Cause of Action ("Opposition Memorandum"), docket no. 40, filed Aug. 17, 2015.

[8] The factual background of this order is based on the allegations contained in the complaint. When reviewing Washington's Motion to Dismiss, all factual allegations must be accepted as true and construed in Plaintiff's favor. *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[9] Amended Compl. & Jury Demand ("Complaint") ¶¶ 9-10, docket no. 28, filed June 6, 2015.

[10] *Id*. ¶ 5.

[11] *Id*. ¶ 6.

if he was diagnosed with cancer.[12] Because Mr. Thompson's condition was terminal, he assigned

his claim to Ms. Thompson.[13] Washington refused to pay Ms. Thompson's claim because Mr.

Thompson allegedly provided false information on his insurance application when he stated that

he had never been "treated or diagnosed with a pre-leukemic or pre-malignant condition or

condition with malignant potential within . . . five years" of completing the application for

insurance coverage.[14] Following Washington's refusal to pay Ms. Thompson, she filed this

lawsuit alleging, among other things, that Washington's refusal to pay her claim violates both

federal law and the Act.[15]

## DISCUSSION

Each of Washington's motions will be considered in turn. First, Washington's 34 Motion

to Strike will be discussed. Second, Washington's 43 Motion to Strike will be addressed. In the

final section Washington's Motion to Dismiss will be discussed.

### The 34 Motion to Strike is Denied – The Reference to Federal Law is Proper

In her first cause of action for breach of contract, Ms. Thompson alleges that

Washington's decision to cancel the Policy "violated state and federal law."[16] Washington

argues that the phrase "federal law" should be stricken from Ms. Thompson's Complaint

pursuant to Rule 12(f) of the Federal Rules of Civil Procedure because it is immaterial to her

claims.[17] Washington argues the phrase is immaterial for two reasons. First, Washington

---

[12] *Id.* ¶ 6.

[13] *Id.*  ¶ 9.

[14] *Id.*  ¶ 11. Ms. Thompson suggests that the denial was based on Mr. Thompson's diagnosis, ten years before the application, with Li-Fraumeni Syndrome, a rare genetic disorder that makes a person more susceptible to cancer. Opposition Memorandum at 2.

[15] *Id.* ¶¶ 39–42.

[16] *Id.* ¶ 23.

[17] *See generally* 34 Motion to Strike at 4–5.

contends that "the only federal statute referred to" by Ms. Thompson "during the pendency of this matter" is the Genetic Information Nondiscrimination Act[18] ("GINA").[19] GINA is a federal law that prohibits health insurers from establishing rules for eligibility (including continued eligibility) or coverage based on a person's genetic information.[20] Washington argues that GINA is inapplicable to this case because "GINA does not provide a private cause of action, except in the context of employment discrimination."[21] Second, Washington argues that GINA's prohibitions do not apply to this case because GINA does not apply to fixed indemnity and supplemental health insurance coverage, and the Policy is "fixed indemnity insurance."[22]

Ms. Thompson disagrees with Washington and argues that the "federal law" language is appropriately included in the Complaint because it is "relevant to Plaintiff's breach of contract claim and breach of the covenant of good faith and fair dealing claims."[23] Ms. Thompson contends that Washington "could not cancel the Policy without breaching it if the cancelation was prohibited by federal law."[24] Ms. Thompson also contends that "cancelling the Policy in violation of federal law further supports Plaintiff's claim that Defendant breached the covenant of good faith and fair dealing."[25] In short, Ms. Thompson believes that "federal law" is material to her claims because cancelling the Policy violated GINA, and was therefore a breach of contract and a breach of the covenant of good faith and fair dealing.

---

[18] 42 U.S.C. § 300gg *et seq.*

[19] 34 Motion to Strike at 4.

[20] 42 U.S.C. § 300gg-4.

[21] 34 Motion to Strike at 4.

[22] *Id.* at 5.

[23] Memorandum in Opposition to Washington National Insurance Company's Motion to Strike at 2 ("34 Opposition Memorandum"), docket no. 39, filed Aug. 17, 2015.

[24] *Id.*

[25] *Id.*

Under Rule 12(f) of the Federal Rules of Civil Procedure, the court may strike any material from a pleading that is "redundant, immaterial, impertinent, or scandalous matter."[26] "A motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties."[27]

Ms. Thompson is correct that the "federal law" reference is not "redundant, immaterial, impertinent, or scandalous matter."[28] Ms. Thompson has a colorable argument that Washington's decision to terminate the Policy violated federal law, and therefore relates to her breach of contract and good faith and fair dealing claims.[29]

Both of Washington's arguments fail under the Rule 12(f) standard. First, Washington's argument that GINA does not provide a private right of action misconstrues Ms. Thompson's argument. Ms. Thompson is not bringing a "private cause of action" under GINA but is rather arguing that the alleged violation of GINA constitutes a per se breach of the Policy. Therefore, the "federal law" language bears some relation to the breach of contract and good faith claims, and it will not be stricken from the Complaint based on Washington's first argument that GINA does not provide a "private cause of action."

Second, Washington suggests that its decision to terminate the Policy did not violate GINA at all because the Policy is a fixed indemnity policy,[30] which is excluded from the definition of health insurance coverage under GINA.[31] This attempt to have the court interpret the language of the Policy is improper at this state of the record. Therefore, the "federal law"

---

[26] Fed. R. Civ. P. 12(f).

[27] *Quigley v. General Motor Corp.*, 647 F. Supp. 656, 657 (D. Kan. 1986) (quoting 5 Wright & Miller, Federal Practice & Procedure § 1382 (1969)).

[28] Fed. R. Civ. P. 12(f).

[29] 34 Opposition Memorandum at 2.

[30] 34 Motion to Strike at 5 (describing "the nature of the policy in question as fixed indemnity insurance").

[31] 42 U.S.C. § 300gg-91(c)(3).

language will not be stricken from the Complaint based on Washington's second argument that the Policy is a fixed indemnity policy.

Because neither of Washington's arguments is successful, the 34 Motion to Strike is DENIED.

### The 43 Motion to Strike is Granted

Washington's 43 Motion to Strike will be decided to clarify what materials may be considered with respect to Washington's Motion to Dismiss.

After Washington filed its Motion to Dismiss, Ms. Thompson filed her Opposition Memorandum and attached several documents to show that the relevant insurance policy is a "Critical Illness" policy rather than a "Fixed Indemnity" policy.[32] The distinction between "Critical Illness" and "Fixed Indemnity" is crucial under the Act because the Act generally bars insurers from requesting an applicant's genetic information in connection with offering or renewing coverage.[33] But this prohibition does not apply if the policy is a "Fixed Indemnity" or "Supplemental Liability" policy.

Ms. Thompson asserts that the court may properly review the attachments to her Opposition Memorandum because they are included to show that it is unclear whether the Policy is a "Fixed Indemnity" policy as Washington asserts.[34] Washington disagrees and argues the attachments should be stricken. Washington is correct.

---

[32] *See* Mem. In Oppo. to Washington Nations Ins. Co.'s Mot. to Exclude Ex.s from Pl.'s Mem. in Oppo. to Mot. to Dismiss Fourth Cause of Action at 2 ("43 Opposition Memorandum"), docket no. 46, filed Sept. 9, 2015.

[33] Utah Code § 26-45-104 (1). The Act defines health care insurance in accordance with Utah Code § 31A-1-301(78)(b), which states "'health insurance' does not include accident and health insurance providing a benefit for…fixed indemnity." Utah Code § 31A-1-301(78)(b)(iii).

[34] To show the insurance policy is not a "Fixed Indemnity" policy or at least ambiguous, Plaintiff attaches several documents to her Opposition Memorandum, including Washington National's Agent Guide, a Washington brochure, a deposition transcript of Ferry Bunting, Washington's Employer's Survival Guide, material from Washington's website, materials from Allstate Insurance Company's website, and material from Intermountain Healthcare's website. *See* Exhibits B through H to Opposition Memorandum, docket no. 40, filed August 17, 2015.

When deciding a Rule 12(b)(6) motion, courts generally "should not look beyond the confines of the complaint itself."[35] The Tenth Circuit, however, recognizes two exceptions to this general rule.[36] First, "the district court may consider mere argument contained in the parties' memoranda concerning a motion to dismiss."[37] Second, "it is accepted practice, if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."[38]

The attachments in Ms. Thompson's Opposition Memorandum may not be considered for two reasons. First, the attachments are not "mere argument" but are attempts to introduce extrinsic evidence that is not otherwise included in or attached to the Complaint. Second, these attachments are neither referred to in the Complaint nor central to Ms. Thompson's claims. Although many of the disputed documents may extrinsically supplement her interpretation of the Policy, they cannot be considered on a motion to dismiss because they are not "central" to Ms. Thompson's claim. A copy of the Policy, for example, would be central to Ms. Thompson's claim. But the attachments Ms. Thompson seeks to admit are not pages from the Policy. Instead, they are screenshots from Defendant's website and other items that are not "central" to her claims.[39] Even if Ms. Thompson's attachments were "central" to her claims, they cannot be properly considered because they were not "referred to" in the Complaint.[40] Ms. Thompson does

---

[35] *MacArthur v. San Juan Cty.*, 309 F.3d 1216, 1221 (10th Cir. 2012).

[36] *Id.*

[37] *Id.* (quoting *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 585 F.2d 454, 457 (10th Cir. 1978)) (internal quotations marks omitted).

[38] *MacArthur*, 309 F.3d at 1221.

[39] *Id.*

[40] *Id.*

not attach or refer to exhibits B through H of her Opposition Memorandum to her Complaint.[41] Therefore, Washington's 43 Motion to Strike is GRANTED. Exhibits B through H, which are attached to Ms. Thompson's Opposition Memorandum, are stricken and will not be considered on the Motion to Dismiss.

### The Motion to Dismiss is Denied

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted."[42] In evaluating the motion, "a court must assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."[43] The court must consider "whether the complaint contains enough facts to state a claim to relief that is plausible on its face."[44]

When a contract is ambiguous, a motion to dismiss is not proper.[45] In Utah, insurance policies are subject to the same canons of construction as an ordinary contract.[46] "Ambiguity may arise in an insurance policy (1) because of vague or ambiguous language in a particular provision or (2) because two or more contract provisions, when read together, give rise to different or inconsistent meanings, even though each provision is clear when read alone."[47]

---

[41] Exhibit A is a copy of the Policy Coverage Page. Washington National Insurance Company Policy Coverage Page, Ex. A to Opposition Memorandum, docket no. 40, filed August 17, 2015.

[42] Fed. R. Civ. P. 12(b)(6).

[43] *Ridge at Red Hawk*, 493 F.3d at 1177.

[44] *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).

[45] *Wilshire Oil Co. of Tex. v. Riffe*, 409 F.2d 1277, 1284 (10th Cir. 1969); *see also Martin Marietta Corp. v. Int'l Telecommunications Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992) ("the construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim").

[46] *Alf v. State Farm Fire and Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993).

[47] *Farmers Ins. Exch. v. Versaw*, 2004 UT 73, ¶ 9, 99 P.3d 796 (Utah 2004).

Washington seeks dismissal of Ms. Thompson's fourth cause of action because the Policy allegedly does not fall within the Utah Genetic Testing Privacy Act.[48] Ms. Thompson's fourth cause of action alleges that Washington's decision to terminate the Policy violates the Act.[49] Like GINA, the Act proscribes insurers from requesting an applicant's genetic information in connection with accepting, denying, or renewing health care insurance.[50] Also, similar to GINA, the Act's definition of "health care insurance" excludes policies for "Fixed Indemnity" and "Supplements to liability."[51] Washington asserts that the Policy is a "Fixed Indemnity" policy and thus is not subject to the Act.[52] The Policy does not contain the phrase "Fixed Indemnity" but is styled "Critical Illness Policy."[53] Washington, however, contends that a "Critical Illness" policy is a subset of a larger category of Fixed Indemnity policies.[54] Washington alternatively argues that the Policy is also a supplement to liability[55] and thus also excluded from the Act's proscriptions.[56]

### The Policy is Not Clearly a Fixed Indemnity or Supplement to Liability

The Policy is ambiguous as to the crucial issue because its provisions, when read together, produce unclear meanings.[57] The Policy is titled "Critical Illness" policy. It does not

---

[48] Motion to Dismiss at 5–6.

[49] Complaint ¶¶ 39–42.

[50] Utah Code § 26-45-104.

[51] *Id.* § 31A-1-301(78)(b)(iii); *id.* § 26-45-104 (1).

[52] Motion to Dismiss at 7.

[53] Washington National Insurance Company CRITICAL ILLNESS POLICY, Exhibit 1 to Affidavit of David Rikkers, Exhibit A to Motion to Dismiss, docket no. 35-1, filed July 7, 2015.

[54] Motion to Dismiss at 7.

[55] *Id.* at 3–4.

[56] Utah Code  § 26-45-104(1); *id.* § 31A-1-301(78)(b)(v).

[57] *Versaw,* 2004 UT 73, ¶ 9, 99 P.3d 796 (Utah 2004) ("Ambiguity may arise in an insurance policy because …two or more contract provisions, when read together, give rise to different or inconsistent meanings, even though each provision is clear when read alone." ).

contain the phrase "Fixed Indemnity." Although the Utah legislature does not expressly define "Fixed Indemnity" within the context of the Act, a common definition of "Fixed Indemnity" is a policy that "pay[s] a fixed dollar amount per day (or per other period) of hospitalization or illness (for example, $100/day) regardless of the amount of expenses incurred."[58] The Policy states[59] that Washington was obligated to pay a lump sum of $70,000 to Ms. Thompson when her late-husband was diagnosed with cancer.[60] When read in isolation, this provision appears to be a type of fixed indemnity because it requires Washington to pay Ms. Thompson a fixed-dollar amount for a specific illness. This provision cannot, however, be read in isolation from all other provisions.[61] Although Washington asserts that a "Critical Illness" policy is a subset of "Fixed Indemnity," Ms. Thompson correctly notes that "[n]othing in the Policy states that it is a supplemental liability or fixed indemnity policy."[62] Further, Washington offers no binding or persuasive authority to support its proposition.

It is unclear whether this "Critical Illness Policy" is a "Fixed Indemnity" policy or something else. As a result of this ambiguity, it is unclear whether the Policy is subject to the requirements of the Act. If a "Critical Illness" policy is *not* a subset of "Fixed Indemnity," Ms. Thompson may be entitled to relief under her fourth cause of action.

It is also unclear whether the Policy is a "supplement to liability" as defined by the Act. The Policy states that the "benefits provided are supplemental and not intended to cover all

---

[58] 26 CFR § 54.9831-1(c)(4); *see also* 29 CFR § 732(c)(4) (quoting identical definition of fixed indemnity).

[59] Washington National Insurance Company CRITICAL ILLNESS POLICY, Exhibit 1 to Affidavit of David Rikkers, Exhibit A to Motion to Dismiss, docket no. 35-1, filed July 7, 2015.

[60] *Id.*; Complaint ¶ 6.

[61] *Versaw,* 2004 UT 73, ¶ 9.

[62] Opposition Memorandum at 3.

medical expenses."[63] Although the Policy is "supplemental" in nature, it does not state whether it is a supplement *to liability*, which is the type of coverage excluded under the Act.[64] Washington offers no binding or persuasive authority to support the proposition that *supplements to liability* include all policies containing the word "supplemental." This ambiguity precludes Washington's Motion to Dismiss because Ms. Thompson may be entitled to relief if the Act's definition of "health care insurance" distinguishes between polices that function as supplements to liability and policies that provide supplemental health care coverage.

### *Ms. Thompson's Fourth Cause of Action Contains Sufficient Allegations to Survive Washington's Motion to Dismiss*

When reviewing a motion to dismiss, a court must accept as true all factual allegations in the complaint and construe them in favor of the non-moving party.[65] "The court must consider "whether the complaint contains enough facts to state a claim for relief that is plausible on its face."[66]

Ms. Thompson has alleged that Washington denied her insurance claim stating her husband lied on his application for insurance.[67] Specifically, in a coverage termination letter, Washington alleged that Mr. Thompson "falsely stated 'No' in response to a question in the application that that asked him whether he had been treated or diagnosed with a pre-leukemic or pre-malignant condition or condition with malignant potential within the last five years."[68] Ms. Thompson suggests that this denial was based on the fact that Mr. Thompson had been diagnosed

---

[63] Washington National Insurance Company CRITICAL ILLNESS POLICY at 1, Exhibit 1 to Affidavit of David Rikkers, Exhibit A to Motion to Dismiss, docket no. 35-1, filed July 7, 2015.

[64] Utah Code § 31A-1-301(78)(b)(v).

[65] *Ridge at Red Hawk*, 493 F.3d at 1177.

[66] *Id.* (*quoting Twombly*, 550 U.S. at 570) (internal quotation marks omitted).

[67] Complaint ¶ 11.

[68] *Id.*

ten years before the application with Li-Fraumeni Syndrome, a rare genetic disorder that makes a

person more susceptible to cancer.[69] Because the Act proscribes health care insurance providers

from denying coverage based on a person's genetic information, it is plausible that Washington

violated the Act when it denied Ms. Thompson's claim. Thus, the complaint alleges sufficient

facts to create a cognizable claim under the Act. As a result, Ms. Thompson's has sufficiently

pled her fourth cause of action to survive Washington's Motion to Dismiss.

## CONCLUSION AND ORDER

The phrase "federal law" contained in Ms. Thompson's first cause of action bears

sufficient relation to her claims to remain in the Complaint. But the material Ms. Thompson has

improperly included in her Opposition Memorandum must be stricken. Finally, the language of

the insurance policy is ambiguous with regard to whether it is a "Critical Illness" or "Fixed

Indemnity" policy, and Ms. Thompson has pleaded a plausible claim under the Act. Therefore,

IT IS HEREBY ORDERED that Defendant's 34 Motion to Strike[70] is DENIED.

IT IS FURTHED ORDERED that Defendant's 43 Motion to Strike[71] is GRANTED

IT IS FURTHED ORDERED that Defendant's Motion to Dismiss[72] is DENIED.

Dated December 8, 2015.

BY THE COURT:

David Nuffer
United States District Judge

---

[69] Opposition Memorandum at 2.

[70] Washington National Ins. Co.'s Mot. to Strike and Supporting Authority ("34 Motion to Strike"), docket no. 34, filed July 7, 2015.

[71] Washington National Ins. Co.'s Mot. to Exclude Exhibits from Pl.'s Mem. in Opp'n to Mot. to Dismiss Fourth Cause of Action and Supporting Authority ("43 Motion to Strike"), docket no. 43, filed Aug. 31, 2015.

[72] Washington National Ins. Co.'s Mot. to Dismiss Fourth Cause of Action and Supporting Authority ("Motion to Dismiss"), docket no. 35, filed July 7, 2015.